# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| DR. COLLEEN ERBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-cv-555 |
| | ) | Phillips/Guyton |
| MICHAEL O. JOHANNS, SECRETARY, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff, Dr. Colleen Erbel, submits the following proposed jury instructions and verdict form.

Respectfully submitted,

/s Jennifer B. Morton
Jennifer B Morton (No.15585)
8217 Pickens Gap Road
Knoxville, Tennessee 37920
(865) 579-0708
Attorney for Plaintiff

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| P-1: | Preponderance = More Likely Than Not | 3 |
| P-2: | Circumstantial Evidence | 4 |
| P-3: | Inferences | 5 |
| P-4: | Expert Testimony | 6 |
| P-5: | Depositions | 7 |
| P-6: | Title VII Discrimination Based on Sex | 8 |
| P-7: | Rehabilitation Act Discrimination Based on Disability | 10 |
| P-8: | Disability Defined | 12 |
| P-9: | Treating Physician Rule | 13 |
| P-10: | Requests for Medical Records | 14 |
| P-11: | Retaliation for Protected Activity-Policy | 15 |
| P-12: | Retaliation-elements | 17 |
| P-13: | Good Faith Belief in Underlying Claim | 18 |
| P-14: | Temporal Proximity | 19 |
| P-15: | Factors In Evaluating Hostile Work Environment Claim | 20 |
| P-16: | Totality of the Circumstances Test | 21 |
| P-17: | Suspension-Evidence of Pretext | 23 |
| P-18: | Employer Strict Liability for Supervisory Harassment | 25 |
| P-19: | Evidence of Discrimination and Retaliation | 26 |
| P-20: | Reasonableness of Employer's Belief | 28 |
| P-21: | Compensatory Damages | 29 |
| P-22: | Plaintiff's Vulnerability is Relevant | 30 |
| VERDICT FORM |  | 32 |

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 1 (P-1)
Preponderance

To establish a preponderance, or greater weight, of the evidence means to prove that something is more likely true than not true. The person trying to show that something happened, or is so, must prove it by a preponderance of the evidence. In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief. We often visualize this by using the analogy of the person who has the burden must tip the scales of justice in his or her favor in order to prevail. If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving that issue must fail. But the evidence for a preponderance does not have to be enough to produce absolute certainty. Absolute certainty in human affairs is seldom possible. A bare preponderance is sufficient. The scales do not have to go all the way down. It is sufficient if they are tipped ever so slightly in favor of the party having the burden of proof.

Source:     *Southmayd v. Apria Healthcare, Inc.*, No. 3:04-cv-215 (J. Phillips Charge).

**For simplicity and clarity throughout the charge and verdict form, the plaintiff requests that this Court substitute the more easily understood phrase "more likely true than not," in place of the phrase "preponderance of evidence."**

3

Circumstantial Evidence

Generally, there are two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence--such as the testimony of an eye witness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances pointing to the existence, or non-existence, of certain facts. Circumstantial evidence proves a fact from which an inference may be drawn. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. The law makes no distinction between the weight that you should give to either circumstantial or direct evidence.

Source:     Sixth Circuit Pattern Jury Instructions (Criminal) 1.06 Direct and Circumstantial Evidence (2005); *Southmayd v. Apria Healthcare, Inc*., No. 3:04-cv-215 (J. Phillips Charge).


There will seldom be 'eyewitness' testimony as to the employer's mental processes. Because such direct evidence of discrimination is rare, victims of employment discrimination may establish their cases through inferential and circumstantial proof.

Source:     *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 141 (2000); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997).


"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."

Source:     *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).


You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.3 (P-3)
Inferences

Inferences are deductions or conclusions which reason and common sense lead you to draw from the facts which have been established by the evidence in the case. An inference is not a suspicion or guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has already been shown to exist. An inference is made through a process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts already proved or admitted.

There are times when different inferences may be drawn from the same fact(s). The plaintiff may ask you to draw one set of inferences, while the defendant may ask you to draw another. It is for you to decide, on the basis of your reason, experience, and common sense what inferences or conclusions you will draw from the evidence.

Source: *Southmayd v. Apria Healthcare, Inc*., No. 3:04-cv-215 (J. Phillips Charge) (modified).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 4 (P-4)
Expert Testimony

You have heard the testimony of psychologist Dr. Denise Tope and psychiatrist Dr. Lane Cook, who were called as expert witnesses in this case.  An expert witness has special knowledge or experience that allows the witness to give an opinion.  You do not have to accept an expert's opinion.  In deciding how much weight to give it, you should consider the witness's qualifications and how he reached his conclusions.  Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.


Source:        Sixth Circuit Pattern Jury Instructions (Criminal) 7.03 Expert Testimony (2005).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5 (P-5)
Depositions

Some of the testimony before you is in the form of depositions, either written or videotaped, which have been received in evidence. A deposition is simply a procedure where the attorneys question a witness or adverse party under oath before a court stenographer prior to trial. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of that witness if he or she had been present and had testified from the witness stand.

Source:    *Southmayd v. Apria Healthcare, Inc.*, No. 3:04-cv-215 (J. Phillips Charge).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.6 (P-6)
Title VII Discrimination Based on Sex

In this case, the Plaintiff alleges that the defendant created a hostile work environment and took adverse actions against her because of her sex in violation of Title VII of the Civil Rights Act of 1964. The language of Title VII that is applicable to the Plaintiff's claim provides: It shall be an unlawful employment practice for an employer -

(1)      . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

The phrase 'terms, conditions, or privileges of employment' . . . includes requiring people to work in a discriminatorily hostile or abusive environment. Thus, harassment based on sex may constitute sex discrimination under Title VII if the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and to create an abusive working environment.

Harassing behavior that is not sexually explicit but that is directed at women and motivated by a animus against women may constitute discrimination based on sex. Intimidation and hostility towards women because they are women can constitute a hostile work environment even though the conduct does not contain sexual overtones. Evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of her gender may constitute discrimination based on sex. We will use the words sex and gender interchangeably in this case.

In order to make out a hostile-work-environment claim based on sex, the plaintiff must show that: (1) she is female; (2) she was subjected to unwelcome harassment; (3) the harassment

8

complained of was based on sex (gender); (4) the harassment was sufficiently severe or pervasive so as to constitute a hostile work environment; and (5) the employer is liable.

Sources:     42 U.S.C. 2000e-(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993); *Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 733 (6th Cir. 2006); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Williams v. General Motors Corp*., 187 F.3d 553, 565 (6th Cir. 1999); *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004); *AMTRAK v. Morgan*, 536 U.S. 101, 116 (2002).

The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

Source:     42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys*., 510 U.S. 17, 25 (1993); *Oncalev. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998 (1998); *Knox v. Neaton Auto Prods. Mfg. Inc.*, 375 F.3d 451, 459 (6th Cir. 2004).

Neutral abusive conduct can support a finding of animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly discriminatory conduct.

Source:     *Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.7 (P-7)
Rehabilitation Act Discrimination Based on Disability

The plaintiff alleges that the defendant's discriminatory actions were also based on her disability in violation of the Rehabilitation Act of 1973. The purpose of this law [§ 504] is to ensure that individuals with disabilities receive "evenhanded treatment" relative to those persons without disabilities. The Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination.

Source:      29 U.S.C. § 791(g), §794(d),  42 U.S.C. § 12111 et seq.; *Mahon v. Crowell*, 295 F.3d 585, 588-589 (6th Cir. 2002); *Olmstead v. L. C. by Zimring*, 527 U.S. 581, 619-620 (1999).

Under the Rehabilitation Act, a hostile work environment claim requires a plaintiff to demonstrate the same elements as a gender based hostile environment claim, except that the plaintiff must show that she is disabled under the definition of the Rehabilitation Act and that the harassment is based on her disability.

Source:      *Plautz v. Potter, 156 Fed. Appx. 812, 815-816 (6th Cir. 2005); Todd v. City of Cincinnati*, 436 F.3d 635, 637-38 (6th Cir. 2006).

The elements and burden of proof are the same, regardless of the discrimination context in which the hostile environment claim arises.

Source:      *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006); *Plautz v. Potter, 156 Fed. Appx. 812, 815-816 (6th Cir. 2005)*; *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

The question is ultimately whether the plaintiff presented sufficient evidence that she was subjected to a hostile environment under circumstances which give rise to an inference of

unlawful discrimination.

Source:     *Macy v. Hopkins County Sch. Bd. of Educ.*, 2007 U.S. App. LEXIS 8382 (6th Cir. 2007) (disability case *citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981).[1]

---

[1] *Macy* panel states that all Circuits except the 10th Circuit have rejected the legal standard that discrimination must be based "solely" on disability, but notes it is bound by prior panel decisions, even if reasoning is incorrect. *Macy* at pp. 11-12 (6th Cir. 2007).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.8 (P-8)
Disability Defined

An individual with a disability is defined as a person who:

1)      Has a physical or mental impairment which substantially limits one or more of such person's major life activities;

2)      Has a record of such impairment; or,

3)      Is regarded by the employer as having such an impairment.


In this case, Dr. Erbel has alleged that she has a mental impairment. "Mental impairment" means any mental or psychological disorder , such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

Relevant major life activities include functions such as caring for one's self, thinking, learning, sleeping, performing daily life activities, and working.

Whether a plaintiff is disabled requires an individualized inquiry because a condition that is not disabling for one individual may be disabling for another. Likewise, Dr. Erbel's disorders or impairments should not be viewed as two separate conditions. Even if neither impairment is sufficient, in and of itself, to render Dr. Erbel disabled within the meaning of the statute, the combined effect of both impairments on Dr. Erbel's ability to function is the relevant consideration.

Source:          29 U.S.C. §706(7)(B); 29 C.F.R. §1613.703; *Battle v. UPS, Inc.*, 438 F.3d 856 (8th Cir. 2006); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999); *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992).

12

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.9 (P-9)
Treating Physician Rule

The ultimate decision of whether Dr. Erbel's mental condition meets the definition of a disability under the Rehabilitation Act is for you to decide. However, in determining the extent to which Dr. Erbel suffers from a disability or substantial impairment, the medical opinion of her treating physician is to be given substantial deference -- and, if that opinion is not contradicted, it may be entitled to complete deference. Dr. Erbel's treating psychiatrist Dr. Cook and her treating psychologist Dr. Tope have had a greater opportunity to examine and observe her and are generally more familiar with her condition than are any other medical personnel. Here, the defendant could have, but did not seek to evaluate Dr. Erbel's condition with a medical provider of its choice.


Source:          *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992).

13

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.10 (P-10)
Requests for Medical Records

An employer may make disability-related inquiries and require medical examinations, but only to the extent such inquiries are job-related and consistent with business necessity. An employer is prohibited from requiring an employee to sign a broad medical release authorizing any or all employer agents to have full access to all of the employee's medical records. Such a broad medical inquiry is not job-related or consistent with business necessity as required by the law.

Source:        42 U.S.C. §12112(d)(4)(A)(1994); 29 C.F.R. §1630.14(c)(1998) .

The Civil Rights Laws depend for their enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses. Effective enforcement can only be expected if employees feel free to approach officials with their grievances. The anti-retaliation provisions of these laws seek to prevent employer interference with employee access to the laws remedial mechanisms by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, or their employers. Protection from retaliation helps assure accomplishment of the laws primary objectives.

Under Title VII of the Civil Rights Act it is an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed unlawful discrimination, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

The Rehabilitation Act also prohibits such retaliation for filing a charge of discrimination or for requesting a reasonable accommodation.

Source:    42 U.S.C. § 2000e-3(a) (section 704(a) of Title VII); §12203(a) of the ADA, 29 U.S.C. § 794a(a)(1) & §791(g); *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2414-15 (2006); *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999). *Shellenberger v. Summit Bancorp*, Inc., 318 F.3d 183, 191 (3d Cir. 2003)*; Heisler v. Metro. Council*, 339 F.3d 622, 627 (8th Cir. 2003); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001); *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1265 (10th Cir. 2001); *Silk v. City of Chicago*, 194 F.3d 788, 799-801 (7th Cir. 1999).

Employees who have engaged in protected activity are protected from retaliatory actions that are materially adverse to a reasonable employee; meaning that the employer's actions could well dissuade a reasonable worker from making or supporting a charge of discrimination.

The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. For example, a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. An act that would be immaterial in some situations is material in others.

Source:         *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415-2416 (2006).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.12 (P-12)
Retaliation-elements

A plaintiff may prove a retaliation claim with evidence that: (1) she engaged in protected activity; (2) the defendant knew that she engaged in the protected activity; (3) the defendant then took a materially adverse action against the plaintiff, or subjected her to a retaliatory hostile environment; and (4) the protected activity and the adverse actions were causally connected.

Source:      *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2409, 2415-2416 (2006); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006); *Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Thus, the essence of a retaliation claim is that the plaintiff engaged in conduct protected by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken, at least in part, because of the protected conduct.

Source:      *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc).

When, or if, the employer knew of the protected activity is a question of fact for you to decide. You may draw an inference that the defendant had knowledge of Dr. Erbel's protected activity based on circumstantial evidence.

Source:      *Mulhall v. Ashcroft*, 287 F.3d 543, 551-54 (6th Cir. 2002);

17

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.13 (P-13)
Good Faith Belief in Underlying Claim

A employer can be found to have violated Title VII's anti-retaliation law even when the plaintiff fails to prove unlawful discrimination. In other words, a plaintiff claiming retaliation does not need to prove that the discrimination happened. The plaintiff may prove a claim for retaliation even where she fails to prove her discrimination claim. A plaintiff need only show that she had a good faith belief that discrimination occurred when she engaged in protected activity. A retaliation claim may succeed where no sex or disability discrimination ever took place.

Likewise, in order to prove a retaliation claim under the Rehabilitation Act, a plaintiff need not show that she suffers from an actual disability or that the employer engaged in disability discrimination. Instead, a reasonable, good faith belief that the statute has been violated suffices.

Source:      *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 187-188 (2005); *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-580 (6th Cir. 2000); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006); 42 U.S.C. § 12203(a); *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249 (10th Cir. 2001); *Standard v. A.B.E.L Servs., Inc*, 161 F.3d 1318, 1328 (11th Cir. 1998); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.14 (P-14)
Temporal Proximity

Evidence that acts of retaliation occurred in close temporal proximity to [or close in time after] the protected conduct may be deemed indirect evidence of a causal connection so as to permit an inference of retaliatory motive to arise.  In other words, the closer in time between the protected activity and the employer's adverse actions, the stronger the inference that the two events are causally connected and indicative of retaliatory motive.

Source:        *Clark County School District v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001); *DiCarlo v. Potter*, 358 F.3d 408, 421-22 (6th Cir. 2004); *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555 (6th Cir. 2004); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006); *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006).

19

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.15 (P-15)
Factors In Evaluating Hostile Work Environment Claim

Dr. Erbel alleges that the defendant subjected her to a hostile environment based on her gender, disability, and because she engaged in protected activity.  In determining whether an environment is sufficiently hostile to violate Title VII, you must look to all the circumstances, including the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance.  A hostile environment must be both objectively and subjectively offensive.  In other words, a reasonable person in the plaintiff's position must find the environment hostile or abusive and the plaintiff, herself, needs to perceive the environment to be hostile or abusive.  You may find that Title VII is violated when the work environment would reasonably be perceived, and was perceived by the plaintiff, as hostile or abusive.  You may consider the effect of the incidents on the employee's psychological well-being because this is relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factors, may be taken into account, no single factor is required.  Whether conduct is sufficiently severe or pervasive is for you to decide.

Source:     *AMTRAK v. Morgan*, 536 U.S. 101, 116 (U.S. 2002); *Harris v. Forklift Sys., Inc.*,
            510 U.S. 17, 20, 23, 114 S. Ct. 367 (1993); *Faragher v. City of Boca Raton*, 524
            U.S. 775, 787 (1998); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733
            (6th Cir. 2006). The effect on the employee's psychological well-being *Williams
            v. General Motors*, 187 F.3d 553, 562 (6th Cir. 1999).

20

A hostile work environment claim is composed of a series of separate acts that collectively constitutes one unlawful employment practice. In considering the objective severity of the harassment all incidents of the harassment alleged by the Plaintiffs must be considered as a whole rather than simply focusing on individual acts of alleged hostility.

This totality-of-circumstances test means that even where individual instances of harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a violation. You must be mindful of the need to review the work environment as a whole, rather than carving the work environment into a series of discrete or separate incidents and measuring the harm occurring in each individual act of alleged hostility. Viewing each incident in isolation robs the incidents of their cumulative effect on the plaintiff. A play cannot be understood on the basis of some of its scenes but only on its entire performance. Similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario. To consider each offensive event in isolation would defeat the entire purpose of allowing claims based upon a "hostile work environment" theory. The totality-of-circumstances examination should be viewed as the most basic tenet of the hostile-work-environment cause of action.

Thus, the issue in a hostile environment claim is not whether each incident of harassment standing alone is sufficient to sustain the claim, but whether -- taken together -- the reported incidents make out such a case. Each incident of harassment contributes to the context in which every other incident occurs. A holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate,

21

and that the work environment created thereby may exceed the sum of the individual incidents.

Source:       *Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 733 (6th Cir. 2006);
              *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999); *Williams v. GMC*,
              187 F.3d 553, 562-563 (6th Cir. 1999).

To prove a discriminatory suspension, Dr. Erbel must show that her gender or disability played a role in her employer's decision-making process and had a determinative influence on the outcome. You may draw an inference of discrimination from evidence that the Agency's reasons for the suspension (1) had no basis in fact, (2) did not actually motivate the adverse action taken against Dr. Erbel, or (3) were insufficient to motivate the adverse action taken against her. Thus, once the employer offers an explanation for its actions, the plaintiff may prove that it is more likely than not that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. That is, Dr. Erbel may establish that she was the victim of intentional discrimination by showing that her employer's explanation is not credible or believable. You may infer the ultimate fact of discrimination from the falsity of the employer's explanation. Thus, if you disbelieve or reject the defendant's explanations for it's adverse actions then you are entitled to infer the ultimate fact of intentional discrimination. Such an inference is consistent with the general principle of evidence law that you are entitled to consider a party's dishonesty about a material fact as evidence of guilt. Under this commonsense principle, evidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation. Likewise, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Proof that the defendant's explanation is not credible is simply one form of circumstantial evidence that may show intentional discrimination. Whether to draw this inference that the defendant was in fact

motivated by discrimination is for you to decide.

Source:        *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 141-43, 147-48, 154 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08, 113 S. Ct. 2742 (1993); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

      Here, the defendant offered a collection of reasons to explain why it suspended Dr. Erbel, but it did not suggest that each reason was an independent basis on which it would have suspended her. Therefore, it is not necessary for Dr. Erbel to prove that all of the reasons for the suspension were false in order for you to infer an improper motive. In other words, you may draw an inference of discrimination or retaliation from evidence that some of the reasons for the suspension were shown to be false and a mere pretext for discrimination.

Source:        *Asmo v. Keane, Inc*., 471 F.3d 588, 596 (6th Cir. 2006)

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.18 (P-18)
Employer Strict Liability for Supervisory Harassment

An employer is strictly liable for supervisor harassment that culminates in a tangible

employment action, such as discharge, demotion, or undesirable reassignment. The suspension

in this case is a tangible employment action. If you find that the defendant subjected Dr. Erbel to

hostile work environment that culminated in a discriminatory suspension, the defendant is strictly

liable for this type of official Agency action. This means that the fifth element of the hostile

environment claim regarding employer liability is satisfied because it follows automatically from

a finding of a discriminatory hostile environment that culminates in a tangible employment

action such as the suspension.

Source:        *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998); accord Faragher, 524 U.S.,
               at 808, 118 S. Ct. 2275.

PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.19 (P-19)
Evidence of Discrimination and Retaliation

You may draw an inference of discrimination or retaliation from evidence demonstrating differences in treatment between Dr. Erbel and similarly situated male employees, or nondisabled employees, or those who have not participated in protected activities.  In other words, if you believe that similarly situated employees were disciplined less harshly for comparably serious infractions, then you may find that the defendant's discipline of Dr. Erbel was discriminatory or retaliatory.  Employees may be deemed similarly-situated to Dr. Erbel even if they do not have the same supervisor or work in the same department or engage in the same alleged misconduct. Whether another employee is similarly situated to Dr. Erbel for purposes of comparing their treatment is a fact specific inquiry for you to decide.

Source:      *Harrison v. Metropolitan Gov't of Nashville*, 80 F.3d 1107, 1115 (6th Cir. 1996); *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005); *Seay v. TVA*, 339 F.3d 454, 479 (6th Cir. 2003).


If you believe that Dr. Erbel's employer deviated from its policies or established procedures when it took certain employment actions against her, then you may find that this deviation from its policies or procedures is circumstantial evidence of improper motive.

Source:      *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. Appx. 387, 394 (6th Cir. 2005) (unpublished); *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424 (7th Cir. 1992); *Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir. 1986); *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982).


Evidence that the employer investigated plaintiff for misconduct without investigating her complaint of a hostile work environment may be indicative of retaliatory intent.

Source:      *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)

26

Other evidence relevant to proving discriminatory or retaliatory motive includes evidence that the employer subjected Dr. Erbel to excessive scrutiny, or disciplined her for trivial matters. Evidence that a supervisor improperly attempted to persuade other employees to complain against her, or evidence that the employer did not carefully investigate incidents that resulted in discipline against her is also indicative of discriminatory or retaliatory motive.

Source:     *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999); *Harrison*, 80 F.3d at 1119; *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370 (6th Cir. 1984).

Reasonableness of Employer's Belief

The reasonableness of an employer's decision is relevant to determining whether its stated reason is its actual motivation. In evaluating the employer's explanations for its employment actions, you should inquire into whether the employer made a reasonably informed and considered decision before taking its adverse employment actions. A plaintiff may show pretext with evidence that the employer's asserted business decision was so ridden with error that it could not honestly have relied upon it. The more idiosyncratic or questionable the employer's reason, the more likely it is to be a pretext for discrimination. Thus, an inference of discriminatory motive may be drawn from an employer's decision that is so lacking in merit that it calls into question its genuineness.

Source:        *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576-77 (6th Cir. 2003).

## PLAINTIFF'S PROPOSED JURY INSTRUCTION NO.21 (P-21)
### Compensatory Damages

If you find in favor of the Plaintiff on any of her claims, you must determine the amount of compensatory damages, if any, to which the Plaintiff is entitled to receive.

The law authorizes an award of compensatory damages where an employer is found to have engaged in unlawful intentional discrimination. You may award compensation to the plaintiff for mental or emotional injuries caused by the defendant's unlawful actions and for similar suffering reasonably certain to be experienced in the future. It is well settled that a plaintiff can prove emotional injury by her own testimony and without medical support. A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden of proof in this regard.

The Plaintiff is not required to put on evidence of the specific monetary value of such intangible things such as, worry, distress, depression, anxiety, fear, sleeplessness, grief, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment, impairment to reputation and shame. Indeed, there is no exact standard for fixing the compensation to be awarded for these damages. Further, the law does not require the Plaintiff to prove her losses with mathematical precision, nor is the opinion of any witness required as to the amount of such reasonable compensation. Any award must fairly compensate the plaintiff for her injury but must have a basis in the evidence and be reasonable in the light of all the facts.

Source:     42 U.S.C. § 1981a(a)(1); *Turic v. Holland Hospitality*, 85 F.3d 1211, 1215-1216 (6th Cir. 1996); *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 485 (6th Cir. 2005); *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S. Ct. 1042 (1978); Tennessee Pattern Instructions - Civil, 5th Ed. 14.10.

Vulnerability is relevant in determining damages. The fact that the plaintiff may be unusually emotionally sensitive and incur great emotional harm from discriminatory conduct will not absolve the defendant from responsibility for the greater emotional harm. The defendant takes the plaintiff as it finds her. In some cases unusual sensitivity will enhance the loss; in others unusual hardiness will reduce it. Payment of the actual damage in each case will both compensate the plaintiff and lead the defendant to take account of the full consequences of its acts. It is particularly relevant to consider the plaintiff's vulnerability when there is evidence that the defendant had knowledge of the plaintiff's vulnerability before it took its actions against her.

Source:        *Turic v. Holland Hospitality*, 85 F.3d 1211, 1215-1216 (6th Cir. 1996).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

DR. COLLEEN ERBEL,                          )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        No. 3:04-cv-555
                                            )        Phillips/Guyton
MICHAEL O. JOHANNS, SECRETARY,              )
UNITED STATES DEPARTMENT OF                 )
AGRICULTURE,                                )
                                            )
        Defendant.                          )


**PLAINTIFF'S PROPOSED VERDICT FORM**

        We, the jury, unanimously find from the evidence that it is more likely than not that:

**Suspension**
   1)      The defendant discriminated against Dr. Colleen Erbel based on her sex when it
           suspended her from her employment.
                   Answer YES or NO _____.

   2)      The defendant discriminated against Dr. Colleen Erbel based on her disability
           when it suspended her from her employment.
                   Answer YES or NO _____.

   3)      The defendant retaliated against Dr. Colleen Erbel for engaging in protected
           activity when it suspended her from her employment.
                   Answer YES or NO _____.


**Sex Discrimination-Hostile Environment**
   4)      The defendant subjected Dr. Colleen Erbel to a hostile work environment based
           on her gender.
                   Answer YES or NO _____.


**Disability Discrimination-Hostile Work Environment**
   5)      The defendant subjected Dr. Colleen Erbel to a hostile work environment based
           on her disability.
                   Answer YES or NO _____.

**Retaliatory Hostile Work Environment**

6)      The defendant subjected Dr. Colleen Erbel to a hostile work environment based on retaliation for engaging in protected activity.

              Answer YES or NO _____.

**Damages**

      If you answered yes to one or more of questions 1-6, then you should answer questions 7-9 below:

7)      Is Plaintiff Dr. Colleen Erbel entitled to an award of compensatory damages?

      Answer Yes or No._____.  If yes, answer questions 8-11.

8)      What amount of damages should be assessed against the Defendant for lost wages resulting from the suspension?
      $_____. (State the amount or if none, write the word "none").

9)      What amount of damages should be assessed against the defendant for lost wages during the time of the harassment?

      $_____. (State the amount, or if none, write the word "none").

10)      What amount of damages for past and future mental and emotional distress should be awarded to Dr. Colleen Erbel?
      $_____. (State the amount or if none, write the word "none").

WHEN THE JURY HAS COMPLETED ANSWERING THE QUESTIONS ON THIS VERDICT FORM, THE PRESIDING JUROR SHOULD SIGN AND DATE THIS VERDICT FORM IN THE SPACES INDICATED BELOW AND CONTACT THE COURT OFFICER.

_____                    _____

Foreperson                                                                    Date

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 21, 2007, a copy of the Plaintiff's Proposed Jury Instructions was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<u>s/ Jennifer B. Morton</u>